## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMIR DOE;<br><br>REZA DOE; and<br><br>FARNAZ DOE<br><br><br><br>Plaintiffs,<br><br>v.<br><br><br>THE ISLAMIC REPUBLIC OF IRAN;<br><br>THE ISLAMIC REVOLUTIONARY GUARD CORPS;<br><br>NATIONAL IRANIAN TANKER COMPANY; and<br><br>NATIONAL IRANIAN OIL COMPANY.<br><br>c/o Ministry of Foreign Affairs<br>Khomeini Avenue,<br>United Nations Street<br>Tehran, Iran<br><br>Defendants. | Civil Case No.: 1:24-cv-2410 |

## **COMPLAINT**

1. Plaintiffs, Mr. Amir Doe, Mr. Reza Doe, and Ms. Farnaz Doe, by and through undersigned counsel, bring suit against Defendants, the Islamic Republic of Iran and the Islamic Revolutionary Guard Corps (hereinafter, "IRGC") (collectively, "Iran", "Iranian Government", or "Defendants") under the Foreign Sovereign Immunities Act, 28 U.S.C. §§ 1602 *et seq.* (hereinafter, "FSIA"), for severe personal injuries and other irreparable harm suffered as a result of Defendants' unlawful acts of hostage taking, torture, and

1

other torts against Plaintiffs and against Plaintiffs' family members, Mr. Arash Doe and Ms. Maryam Doe.

2. Plaintiffs, Mr. Amir Doe, and his parents, Mr. Reza Doe and Mrs. Farnaz Doe, bring this complaint to recover for the actions of the Iranian government in taking hostage, wrongfully imprisoning, and torturing Mr. Reza Doe, and his two children who remain in Iran, Mr. Arash Doe and Ms. Maryam Doe (hereinafter, "Arash Doe", "Maryam Doe", or "the Doe siblings". Plaintiff, Mr. Amir Doe, was arrested and tortured in Iran in 1999 for his political activism as a student. The Iranian authorities have periodically arrested and tortured his siblings remaining in Iran multiple times over the last fifteen years, first for their relationship with Mr. Amir Doe, and eventually with the intent to exact pressure on Mr. Amir Doe to return to Iran and serve the regime's purposes after he became a successful Engineer for the state of Washington.

3. Mr. Amir Doe's family members have been beaten, taken hostage, wrongfully imprisoned without conviction or charge, tortured, threatened with death and harm to their loved ones, and held in extended periods of solitary confinement. The Iranian regime committed these acts to attempt to pressure Mr. Amir Doe to return to Iran to serve the regime as a specialized engineer. Furthermore, as Persian Jews, the family has faced false accusations of working as agents for foreign governments, including Israel and the United States while in custody of the regime.

4. After one of these incidents, where the regime arrested and detained, his father, Mr. Reza Doe, a U.S. citizen and Plaintiff in this case, returned to Iran to try and secure their release. There, he was taken hostage outside the Courthouse where his children were

being held by agents of the Islamic Revolutionary Guard Corps (hereinafter, "IRGC").

The agents beat Reza Doe so severely that he fell into a traumatic coma.

5. Plaintiffs bring this action under §1605A of the Foreign Sovereign Immunities Act, which

provides for private causes of action against a state sponsor of terrorism, in this case, the

Islamic Republic of Iran, for personal injury caused by *inter alia*, acts of hostage taking

and torture.

## I.      JURISDICTION AND VENUE

6. This Court has jurisdiction over this matter and over Defendants pursuant to 28 U.S.C. §§

1330(a), 1330(b), 1331, 1332(a)(2), and 1605A(a)(1), which grant subject matter

jurisdiction and personal jurisdiction for civil actions for personal injuries against State

Sponsors of Terrorism and their officials, employees, and agents.

7. 28 U.S.C. §1605A(c) provides a federal private right of action against a foreign state that

is or was a State Sponsor of Terrorism, and against any official, employee, or agent of

that foreign state while acting within the scope of his or her office, employment, or

agency, for personal injury and related torts.

8. Venue is proper in this district pursuant to 28 U.S.C. § 1391(f).

## II.      PARTIES

9. **Plaintiff, Mr. Amir Doe** is an Engineer, born in Iran on September 21, 1977. In 1999,

Mr. Amir Doe was arrested after he became involved in student activism. During this

period of detention, Mr. Amir Doe was tortured and pressured to confess to being an

agent of Israel, due to his identity as a Jew, an accusation which was patently false and

which he denied. To escape further persecution, Mr. Amir Doe fled to Europe where he

lived for three years as a refugee. Mr. Amir Doe subsequently move to the United States

on September 13, 2001. He was granted United States citizenship on August 28, 2007. He

3

is currently a domiciliary and resident of the state of Washington. Since coming to the United States and a career as a successful structural engineer, Mr. Amir Doe's siblings have been targeted by Defendants, accused of being foreign agents, and pressured to convince Mr. Amir Doe to return to work for the Iranian regime.

10. **Plaintiff, Mr. Reza Doe** (hereinafter "Reza Doe"), is the father of Mr. Amir Doe, and of Arash Doe and Maryam Doe, who have been targeted by the regime. Reza Doe was born in Iran on July 23, 1949, and was granted United States Citizenship on November 24, 2020. As described above, Reza Doe was a victim of hostage taking and torture at the hands of the Iranian regime in May 2022.

11. **Plaintiff, Mrs. Farnaz Doe** ("Mrs. Farnaz Doe"), is Mr. Amir Doe and the Doe siblings' mother. Mrs. Farnaz Doe was born in Iran on October 7, 1953. She was granted United States citizenship on February 20, 2017.

12. **Defendant, the Islamic Republic of Iran** (hereinafter "Iran" or "Iranian Regime") is a foreign state, designated as a state sponsor of terrorism by the U.S. Department of the Treasury. Iran is a hybrid theocratic republic, with the Head of State – the Ayatollah or Supreme Leader – appointed for life by a council of theologians, and a President, elected by popular vote. The Supreme Leader controls the Guardian Council of the Constitution, which interprets the Iranian Constitution, supervises elections (including by determining which candidates may run), and exercises significant influence over the legislative, executive, and judicial branches of government, as well as the military and the Islamic Revolutionary Guard ("IRGC"). The Islamic Republic of Iran was established after the Iranian Revolution overthrew the Shah in 1979.

13. **Defendant, the Iranian Revolutionary Guard Corps** ("IRGC") is a military organization under the control of the Guardian Council. The IRGC was established in the wake of the Islamic Revolution to act as the country's "ideological custodian" and is generally understood to be one of the most reactionary, powerful, and oppressive factions of the Iranian Government. The IRGC fields an army, navy, air force, and intelligence service, and a paramilitary arm known as the Quds Force. The Quds Force conducts foreign operations and has primary responsibility for arming pro-Iranian military groups across the Middle East and beyond and has been designated by the U.S. Department of Treasury as a sponsor and supporter of terrorism.[1]

14. **Defendant, National Iranian Tanker Company ("NITC")** is company used by Defendant Iran and IRGC to facilitate the sale of oil and financing the conduct of Iran and IRGC.

15. **Defendant, the National Iranian Oil Company ("NIOC")** is company used by Defendant Iran and IRGC to facilitate the sale of oil and financing the conduct of Iran and IRGC.

### III.    STATEMENT OF FACTS

16. Reza Doe was born a Muslim in Iran. Mrs. Farnaz Doe was born into a well-known Persian-Jewish family in Mashhad, Iran. The two were married prior to the Iranian Revolution and had three children: Mr. Amir Doe, Ms. Maryam Doe, and Mr. Arash Doe.

**A.    Mr. Amir Doe**

---

[1] U.S. Dep't of Treasury, *Blocking Property and Prohibiting Transaction with Persons Who Commit, Threaten, to Commit, or Support Terrorism*, www.treasury.gov/resources-center/sanctions/Programs/Documents/terror.pdf.

17. Mr. Amir Doe was born on September 21, 1977, in Mashhad, Iran. In the 1990's, he was a student at the University of Tehran, where he became involved in student activism and the freedom movement in 1998.

18. On July 10, 1999, Mr. Amir Doe was arrested in his dormitory at the University of Tehran for his involvement in the student activist movement. He would remain in detention from July 10th through October 6th, 1999. He was held in the Tohid Detention Center in Tehran for the first seven days. He was beaten repetitively during this first week, suffering three broken fingers on his right hand due to the beatings he endured.

19. Mr. Amir Doe was then relocated to Karaj Rajayee Shar Detention Center and held there for 81 days. He was charged with acting against national security, attending student uprising demonstrations in Tehran, and chanting slogans against the Iranian regime. Mr. Amir Doe recalls being subject to regular beatings, torture, and prolonged interrogations to get him to sign the charges against him. During the course of these interrogations, he was injected with unknown substances, known as "Moscow Pigeon", that his interrogators claimed would make him confess. Mr. Amir Doe was held in total for 88 days before being released on October 6, 1999, after efforts by his father to secure his freedom.

20. Fearing for his son's safety and life, Reza Doe bribed the IRGC to release his son. Reza Doe had to sell off family land to get the funds to secure his son's freedom. The family then managed to get Mr. Amir Doe out of the country, fearing that the IRGC would continue to target him.  Mr. Amir Doe arrived in Germany in 1999, where he remained as a refugee for three years.  At one point during his time in Germany, his case was refused by German authorities, and he was placed in a deportation camp to await return to Iran.

During this period, Mr. Amir Doe suffered intense stress and anxiety, and was deeply in fear of what could happen to him if he was returned to Iran. The separation from his family, and not knowing whether he would ever be able to see them again added to the pain and stress he felt. Fortunately, Mr. Amir Doe was ultimately not deported, and was eventually released.

21. He immigrated to the United States on September 13, 2001. Sadly, Mr. Amir Doe was diagnosed with Leukemia for the first time in December of 2001, only three months after arriving in the United States.  He underwent treatment and went into remission six months later. He relapsed and was diagnosed with Stage 4 Leukemia in 2006 and was only able to survive thanks to a stem cell transplant.  While Mr. Amir Doe's cancer diagnosis cannot be said to be directly caused by his torture, the years of intense stress and anxiety that he has suffered likely contributed to his weakened condition.

22. After arriving in the United States, Mr. Amir Doe began studying at the University of Washington until 2005.  He became a Structural Engineer and began working for the Washington Department of Transportation ("WDOT"), where he has worked for the last nineteen years. In November of 2014, Mr. Amir Doe was put in charge of Structural Engineering and Inspection for the building of a Mega Bridge Project, the SR520. also referred to as the Evergreen Point Floating Bridge. The SR520 is the largest floating bridge in the world and is a great feat of structural engineering. Overseeing an important portion of the engineering, operation, and inspection of such a large project is a great responsibility that Mr. Amir Doe is proud to have accomplished. His involvement in it attests to his expertise and skill as a Structural Engineer.

**B.     The Targeting of the Doe siblings**

7

23. Since Mr. Amir Doe fled Iran, his family suffered at the hands of the regime.  Firstly, for their status as Iranian Jews, since their mother, Mrs. Farnaz Doe is Jewish, who are heavily discriminated against and violently repressed by the regime. The family has been regularly accused of being spies for the Israeli government because of their Jewish heritage. Secondly, for their relationship with Mr. Amir Doe, due to his previous activism before fleeing the country, and for their own activism.  Lastly, more recently, they have been heavily targeted by the regime to pressure Mr. Amir Doe to return to Iran to work for the regime, now that he is a Structural Engineer. They also accuse them of being spies for the United States, due to Mr. Amir Doe's status as a U.S. citizen.

24. The Doe siblings remaining in Iran have been taken hostage, arrested, interrogated, charged with frivolous and false crimes, and tortured numerous times since Mr. Amir Doe fled the country. However, since Mr. Amir Doe began working for WDOT, the pressure the regime is placing on the family has increased, and now largely involve the regime's agents attempting to coerce his family to provide information about Mr. Amir Doe's work, which they do not have, including the names and contact information for his coworkers, and information about Department of Transportation locations, branches, and headquarters. They have tried to pressure the family to convince Mr. Amir Doe to meet Iranian agents in a neighboring country to provide information, and ultimately want to coerce Mr. Amir Doe to return to Iran to work for the regime.

        1.      **Treatment of Mr. Arash Doe**

25. Arash Doe has been regularly either taken hostage or arrested and tortured by agents of the regime between 2008 and 2022. Though he does not know the exact number of times he has been detained, interrogated, and tortured by the regime, there have been eight

separate major periods of detention, totaling 473 days, where he suffered varying degrees of torture.  Each is described in detail below.

26. (1) Arash Doe was arrested in Mashhad on June 28, 2008, and accused of interfering with elections and working for a foreign government (Israel). He was detained for 103 days in Torgabeh Detention Center. During this time, he was beaten and endured both physical and "white" torture. He suffered a broken arm from one such encounter. He was held in solitary confinement for extended periods and was denied any access to legal counsel. He was eventually released on October 10, 2008. The principal accusations he faced were related to his Jewish heritage, and he was accused of having ties and loyalty to Israel and connections to the Israeli Intelligence Service (Mossad).

27. (2) Three years later, Arash Doe was arrested again, on March 18, 2011, this time in Tehran. He was arrested in his office at the Canon Corporation[2], where he worked as a Manager in the Head Office Division for Cameras and Copy Machines in front of customers. He was held in Evin Prison, which is notorious for the torture of political prisoners. Arash Doe was charged again with being a foreign agent and with supporting the Green Movement, a student activist movement.  During his detention, he was beaten and accused of using his position as a Manager in the Canon Corporation to provide aid and pamphlets to students involved with the Green Movement. He lost his position at the company, where he had been for ten years, because he was arrested at work and was verbally accused of being an Israeli spy in front of customers. He was released after 41 days on April 28, 2011.

---

[2] The Canon Corporation here refers to the Iranian branch of the global technology brand "Canon" most well-known for cameras, printers, etc.

28. (3) On May 1, 2016, Arash Doe was taken hostage by government agents in Tehran and held incommunicado for 66 days. He was kept in solitary confinement for the duration of his detention, again under accusations of being an Israeli agent. Arash Doe experienced extreme duress during this time, being kept in an unofficial location, completely alone save for the sessions of torture and interrogation. He suffered more white torture during this period, with the guards staging the interrogation room for his execution numerous times. On one occasion, the guards staged a hanging, tying a rope into a noose and placing a bench under it. They forced Arash Doe to stand on the bench, put a hood over his face and head, put the noose around his neck, and told him to say his last words and to admit to being a Mossad agent before they kicked the bench from under him. On another, he was walked to an area where he was told executions were committed by firing squad. He was made to stand against one side of the area. They brought in a line of soldiers, armed with guns on the other side, and blindfolded Arash Doe. First the soldiers fired off rounds, not aimed at Arash Doe, but he was unaware of that because he could not see. Then, they removed the blind fold, reloaded their guns, and started shooting again, this time with the guns pointed directly at him. This, again, was a staged execution, and the guns must have been loaded with blanks. After enduring this torture for 66 days, Arash Doe was released on July 6, 2016.

29. (4) On July 6, 2017, one year after his last release, Arash Doe was arrested in Mashhad and held in Kouhsangi Detention Center, where he was accused of providing information to family members who were agents of the United States, meaning his parents and Mr. Amir Doe. He was detained for 84 days, largely in solitary confinement. They regularly deprived him of sleep and kept him in lengthy interrogations. The guards forced Arash

Doe to call Mr. Amir Doe to invite him to work with an Iranian agent on multiple

occasions. Each time, Mr. Amir Doe refused to cooperate with the regime. Each time,

they made him tell Mr. Amir Doe that if he cooperated with them, they would take it easy

on his family, otherwise, they would kill them. Arash Doe was released on September 28,

2017.

30. (5) on December 29, 2017, just a few months later, Arash Doe was arrested again, along

with his sister Maryam Doe, during a larger crackdown due to protests and unrest

throughout the country. Neither of them had participated in any way with the protests.

They were forced from their home in the middle of the night, blindfolded and taken to

Kouhsangi Detention Center where they were separated. Both were accused of being

spies paid by Mossad to arrange for the uprising happening around the country.

31. During his detention, Arash Doe was beaten and subjected again to white torture. His

captors tried to manipulate him by saying that his wife was being forced into a

relationship with one of the prosecutors, telling her that she wouldn't be able to care for

their child if she doesn't become the mistress of one of the agents named Mohebi. They

told him that they had installed a camera in his bedroom and had recorded Arash Doe in

bed with his wife and would publish it on social media. They told him that they raped his

sister and recorded it and would release that too.[3] He was also told that he and his sister

would be hanged soon, causing even greater distress and fear. He was held for 47 days

before being released on February 14, 2018.

---

[3] It is unclear whether any recording of either Arash Doe's wife or Maryam Doe was made, but Maryam Doe was in
fact raped by agents during her detention, discussed in subsection 2 below.

32. (6) Arash Doe was arrested once again in Mashhad on April 6, 2022, and taken to Vakilabad Jail. It is unclear what the accusations were for this period of detention. He was held in solitary confinement and was barred from having any contact with the outside world. No one could get any information about where he was being kept or why he was arrested. He was again subjected to white torture. After six weeks without knowing where his son had been taken and having no contact, Arash Doe's father, Reza Doe flew from the United States to Iran to try and find his son and secure his release. While on this endeavor, Reza Doe was taken hostage and severely beaten, falling into a traumatic coma for several days. While he was in the coma, Arash Doe was released on May 25, 2022, after 49 days in incommunicado detention, one day before his father was left in the street after coming out of the coma. The family believes Arash Doe was released due to the condition of his father.

33. (7) On September 23, 2022, Arash Doe was again taken hostage by agents of the regime in Mashhad and taken to a private house in an unknown location. It can be assumed that this house was one of the IRGC's many safe houses used for incommunicado detention and interrogations throughout all the major cities in the country. The guards' behavior was much different at the beginning of this period of detention. The agents were suspiciously friendly to Arash Doe and offered him compensation for all the mistreatment he had suffered over the years. They offered to return his father's lands that had been seized. However, they told him they would only do this if he could convince Mr. Amir Doe to travel to one of the neighboring countries to meet an agent in person, so that they could offer him an official invitation of cooperation. The agents continued to try and bribe Arash Doe, saying that they would let him leave Iran and that he and Mr. Amir Doe

could have a successful business in a neighboring country backed by the regime. Throughout this period of detention, Arash Doe called Mr. Amir Doe numerous times to try and get him to cooperate, all of which he refused. After failing to secure Mr. Amir Doe's cooperation, Arash Doe was finally released after 42 days on November 3, 2022.

34. (8) Finally, on September 5, 2023, Arash Doe was called by Sepah Intelligence in Mashhad and told to come to their office. The next day, they made Maryam Doe come to the same place. It is unclear where they were held or what happened during this period of incommunicado detention, but neither Arash Doe nor Maryam Doe were released until October 16, 2023, 41 days later.  They were held, again on accusations of being spies for Israel, and interrogated to see if either had provided any information to the Israeli government. Mr. Amir Doe believes that they were fishing to find out if Israel had any knowledge of the planning of the Hamas Attack against Israel on October 7, 2023. When the siblings were released, they were given pastries, 'to celebrate the Hamas victory.'

35. Throughout the different periods of detention, Arash Doe was told by the IRGC agents holding him in captivity that his entire family would be disappeared and killed. He was refused legal counsel, and even on the rare occasion that he was given access to counsel, no lawyer would take his case due to the fear of backlash from the regime. He was never actually formally tried of any charges in the court system. He was held either without charge or charged informally and never tried. The regime only wanted to subject him to this treatment because he is Jewish and because of his connection to Mr. Amir Doe.

### 2.    Treatment of Maryam Doe

36. Maryam Doe has suffered two significant periods of detention at the hands of the Iranian regime. The treatment she was subjected to in those two periods was severe and has had major impacts on her life since.

37. On December 29, 2017, Maryam Doe was taken hostage from her home, along with her brother Arash Doe, in the middle of the night. As described above, both were blindfolded and brought to the Kouhsangi Detention Center, where they were separated. Like Arash Doe, Maryam Doe was accused of being a spy for the Israeli government due to her Jewish heritage. She, also like Arash Doe, was told that she would be hanged soon for being a foreign agent. During her detention, which lasted for 47 days, she was repeatedly beaten, tortured, and subjected to sexual violence by her guards. She was beaten with a baton across her back and her face and was raped by two of the interrogators. She remained in detention, being subjected to sexual violence, physical and psychological torture, for 47 days before she was released on February 14, 2018.

38. The second period that Maryam Doe was detained, also along with her brother, began on September 6, 2023, when she was told to come to the Sepah Intelligence Office in Mashhad. There are very few details about this period, but she was held incommunicado in an unknown location. As mentioned before, Mr. Amir Doe believes this was again in relation to their Jewish heritage, with the IRGC accusing them of being agents of Israel and attempting to glean whether Israel had any knowledge about the upcoming October 7 attack by Hamas. She was released, along with her brother, on October 16, 2023, after 40 days incommunicado.

### 3.    Treatment of Reza Doe

39. When Arash Doe was taken hostage and detained in April 2022, discussed in detail above, he was held incommunicado. Reza Doe, Arash Doe's father, and Plaintiff in this case, became greatly distressed after six weeks of hearing no word about his son's wellbeing. Unable to obtain any information about Arash Doe's detention from so far away in the United States, he decided to go to Iran to inquire in person about his son's

14

welfare. On May 15, 2022, Reza Doe tried to go before the Revolutionary Court, Unit 901 in Mashhad, to get information about Arash Doe's location. Reza Doe taken from the courtyard by IRGC agents, who zip tied his hands behind his back, blindfolded him and taken in the back of a car to an unknown location. This can be seen on security footage obtained of the courtyard. That night, Reza Doe was severely and repetitively beaten by IRGC agents. It is unclear exactly what happened, because he was beaten so severely, likely either with a baton or piece of rebar, that he suffered severe blunt force trauma to the head. His injuries caused him to suffer a severe concussion and fall into a coma. These are the only details he remembers from his harrowing experience. He awoke in a guarded room at a military hospital several days later.  He was kept in the hospital, unable to contact his family, until agents removed him from the hospital and dumped him on a street in Mashhad on May 26, 2022, eleven days after he was taken to the court.

40. From what he can remember, the agents who took Reza Doe hostage, interrogated him about why he returned to Iran, and accused him of coming back only to plan something nefarious, to which he tried to plead with them that the only reason he came back was to find his son. He was never formally arrested or charged with any crime, and he does not know where he was taken. The incident left Reza Doe in a coma and with a severe concussion. He now suffers from memory issues and residual brain damage.

### C.    Harm to the Family

41. Arash Doe, Maryam Doe, and Plaintiff Reza Doe are innocent victims of the authoritarian Iranian regime. They have suffered intense trauma at the hands of the regime simply for being Jews in Iran and for their familial relationship with a U.S. citizen.

42. Arash Doe has suffered severe mental and physical impacts from his years of intermittent detention and torture at the hands of the Iranian regime. In particular, he has night terrors

about the fake executions and suffers from insomnia. Mr. Amir Doe describes the impact

on Arash Doe, stating that he has "never been a regular human being since these events".

43. Maryam Doe also has suffered greatly from her treatment by the IRGC during her

detention. She was subjected to torture, both physical and psychological. She was told

that she would be hanged. She was severely beaten, and still experiences significant

physical pain from the injuries she sustained. She was raped, a trauma that no person

should ever have to experience. To make matters worse, after finding out that she was

raped, Maryam Doe's husband left her. She suffers from severe anxiety and the effects of

the trauma, that she will never be able to forget.

44. Reza Doe suffers from brain damage and memory issues as a result of his ordeal. Because

of this, the family has had to hire part-time caregivers to help care for him and supervise

him. He suffers from intense stress, worrying about what his children may be subjected to

and the separation of the family. Reza Doe suffered a stroke due to the stress he felt when

his children were arrested and detained. He experiences nightmares since the arrests of

his children began and constantly agonizes over how to get his two children remaining in

Iran out before he dies.

45. These events have caused significant harm to Plaintiffs Mr. Amir Doe, Mrs. Farnaz Doe,

and Reza Doe. Mrs. Farnaz Doe is diabetic which has caused medical complications

when coupled with the intense stress and anxiety she has suffered out of concern for her

children and husband. This stress has caused her to have a hard time eating, which is

problematic for her diabetes, and she has suffered unhealthy weight loss, falling to below

110 pounds. The stress on both her body and mind has also led to the loss of her eyesight,

and she is now considered legally blind. Both Reza Doe and Ms. Farnaz Doe's worsening

health because of their families' experiences means that they need part-time medical supervision and caretaking.

46. Mr. Amir Doe has suffered overwhelming stress, anxiety, and guilt over the treatment of his family members at the hands of the regime. He feels responsible in some way for the harm they have suffered, because much of it has been used to try and get to him due to his career. This stress has taken a toll on his body, and though he is now in remission, he believes it caused his bouts with Leukemia. Mr. Amir Doe has not been able to contact his siblings in several years, due to the security risk it poses them, and because of the ongoing pressure the Iranian regime is trying to exact on him through his family. He does not know whether he will ever get the chance to see his siblings again, causing great distress. These situations have deeply effected Mr. Amir Doe's wellbeing, and he experiences anxiety every day over the safety of his siblings and the welfare of his aging and distraught parents. The Iranian Regime is responsible for the trauma that this family has suffered. Mr. Amir Doe brings this suit, along with his parents, to try and find some sort of justice for the harm the regime has caused them.

## **COUNT 1**
## **28 U.S.C. 1605A(c), PRIVATE RIGHT OF ACTION**

47. Plaintiffs incorporate by reference the allegations of the preceding paragraphs.

48. Iran is a state sponsor of terrorism as described in 28 U.S.C. §1605A(a)(2)(A)(i).

49. Defendants and their agents were acting within the scope of their office, employment, or agency in committing the acts alleged herein, including, but not limited to, the hostage taking and torture of Arash Doe, the hostage taking and torture of Maryam Doe, and the hostage taking and torture of Reza Doe.

50. As a direct and proximate result of the willful, wrongful, intentional and reckless acts of the IRGC and its agents, which were funded and directed by the Islamic Republic of Iran and other Iranian government entities, Plaintiffs have suffered, *inter alia*, physical pain and suffering, emotional pain and suffering, and economic losses resulting from Defendants' acts.

51. Pursuant to 28 U.S.C. § 1605A(c), Plaintiffs, who are nationals of the United States, may assert a cause of action against Defendants for personal injury that was caused by acts of hostage taking and torture, or the provision of material support or resources for such acts, if performed or provided by an official, employee, or agent of Iran while acting within the scope of his or her office, employment, or agency.

52. Plaintiff, Mr. Amir Doe became a U.S. citizen on August 27, 2007.

53. Plaintiff, Reza Doe became a U.S. citizen on November 23, 2020.

54. Plaintiff, Mrs. Farnaz Doe became a U.S. citizen on February 17, 2017.

55. Accordingly, as a result of Defendants' actions, Plaintiffs seek compensatory and punitive damages.

## COUNT II
## ASSAULT AND BATTERY

56. Plaintiffs incorporate by reference the allegations of the preceding paragraphs.

57. "An actor is subject to liability to another for assault if (a) he acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such contact, and (b) the other is thereby put in such imminent apprehension." [4]

---

[4] Restatement (Second) of Torts § 21 (Am. Law Inst. 1965).

58. Hostage taking and torture, under the FSIA, constitute assault because "acts of terrorism are, by their very nature, intended to harm and to terrify by instilling fear of further harm."[5]

59. Arash Doe, Maryam Doe, and Reza Doe were held hostage and tortured by Defendants, resulting in harmful contact and fear of such harmful contact.

60. Furthermore, while in Defendant's custody, Arash Doe, Maryam Doe, and Reza Doe were routinely threatened with and subject to harmful and offensive contact, including threats of death and mock executions, being forcible moved at gunpoint, beatings, rape, sleep deprivation, and prolonged solitary confinement. These threats placed Arash Doe, Maryam Doe, and Reza Doe in imminent apprehension of death, torture, abuse, and other physical and emotional injuries, constantly fearing for their health and safety and that of their families.

61. Plaintiffs seek compensatory and punitive damages.

## COUNT III
## FALSE IMPRISONMENT

62. Plaintiffs incorporate by reference the allegations of the preceding paragraphs.

63. "(1) An actor is subject to liability to another for false imprisonment if (a) he acts intending to confide the other or a third person within boundaries fixed by the actor, and (b) his act directly or indirectly results in such a confinement of the other, and (c) the other is conscious of the confinement or is harmed by it."[6]

---

[5] *Valore v. Islamic Republic of Iran*, 700 F. Supp. 2d 52, 76 (D.D.C. 2010).
[6] Restatement (Second) of Torts § 35 (Am. Law Inst. 1965).

64. The instances of unlawful arrest and imprisonment of Arash Doe, Maryam Doe, and Reza Doe by Defendants constitutes false imprisonment. [7]

65. Defendants unlawfully detained Reza Doe in an unknown location, and subsequently a hospital, after severely beating him into a coma. Reza Doe was fully aware of his arrest, in front of the courthouse and the subsequent illegal detention afterward, and has suffered physical, economic, emotional, and psychological harm because of this illegal detention.

66. Defendants unlawfully detained Arash Doe multiple times in Evin Prison, Kouhsangi Detention Center, Torgabeh Detention center, Vakilabad Jail, and in unknown and unofficial detention locations. Evin Prison is an institution known both within Iran and globally for its brutal mistreatment of hostages, political prisoners, and human rights defenders. Arash Doe was fully aware of these illegal detentions and has suffered physical, economic, emotional, and psychological harm because of these illegal detentions.

67. Defendant's unlawfully detained Maryam Doe in Kouhsangi Detention Center. Maryam Doe was fully aware of this illegal detention and has suffered physical, economic, emotional, and psychological harm because of this illegal detention.

68. Plaintiffs seek compensatory and punitive damages.

## COUNT IV
## HOSTAGE TAKING AND TORTURE UNDER THE FSIA

69. Plaintiffs incorporate by reference the allegations of the preceding paragraphs.

70. The FSIA confers jurisdiction on the courts of the United States and creates an independent federal cause of action to recover for injuries sustained as a result of terrorist

---

[7] *See, e.g.*, *Jenco v. Islamic Republic of Iran*, 154 F. Supp. 2d 27, 34 (D.D.C. 2001); *Sutherland v. Islamic Republic of Iran*, 151 F. Supp. 2d 27, 49 (D.D.C. 2001).

acts, such as hostage taking and torture. Under the statute, Plaintiffs must prove that (1) there was an act of "hostage taking" or "torture"; (2) the act was committed by the foreign state or "an official, employee, or agent of such foreign state"; (3) the act "caused" (4) "personal injury or death" (5) for which the courts of the United States may maintain jurisdiction under this section for money damages."[8]

71. Seizing an individual in an effort to extract information from him or her to be used against him, her, or others is hostage taking within the definition provided by the FSIA.

72. Arash Doe has been seized by the Defendants' agents multiple times and detained while under their full control and in their physical custody. He was detained in Evin Prison, Kouhsangi jail, Torgabeh Detention center, Vakilabad Jail, and in unknown detention locations, many of these locations are facilities notorious for brutal mistreatment of prisoners and individuals detained without due process. He was denied counsel during the process. Arash Doe was held in solitary confinement on each case of imprisonment, and without access to contact anyone, so much so that his father, Reza Doe, flew all the way from the United States to ascertain where his son was being imprisoned.

73. Maryam Doe was seized by the Defendants' agents and detained while under their full control and in their physical custody. She was taken to Kouhsangi jail, where she was kept in solitary confinement without access to counsel.

74. Reza Doe was seized by Defendants' agents and detained while under their full control and in their physical custody. He was taken to an undisclosed location before being severely beating and taken to a hospital where he was still in Defendants' agents custody.

---

[8] 28 U.S.C §1605A(a)(1) & (c); *Valenica v. Islamic Republic of Iran*, 774 F. Supp. 2d 1, 10–11 (D.D.C. 2010).

Reza Doe was not provided due process before being taken into custody and beaten, for example, he was never charged with any offense and was denied access to legal counsel.

75. There is significant and compelling evidence Defendants tortured Arash Doe, Maryam Doe, and Reza Doe to compel them to provide information about Mr. Amir Doe's employment, contacts, and to get him to work with Iranian agents.

76. Arash Doe, Maryam Doe, and Reza Doe's prolonged detentions and torture resulted in physical injuries. Reza Doe suffers from memory loss and body injuries, and mental illnesses. Maryam Doe suffers from extreme anxiety/depression/trauma from her rape and torture while detained. Arash Doe suffers from anxiety/depression/trauma.

77. Arash Doe, Maryam Doe, and Reza Doe's prolonged detention and torture further resulted in psychological suffering due to, *inter alia*, lack of medical care, inadequate nutrition, interrogations, physical distress, intimidation and disorientation, and denial of due process. While in prison, Arash Doe, Maryam Doe, and Reza Doe experienced both mental and physical abuses. Today they each continue to suffer physical and mental injuries.

78. Plaintiffs seek compensatory and punitive damages.


## COUNT V
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS/ SOLATIUM (for torture of all Plaintiffs)

79. Plaintiffs incorporate by reference the allegations of the preceding paragraphs.

80. "An actor who by extreme and outrageous conduct intentionally or recklessly causes severe emotional harm to another is subject to liability for that emotional harm and, if emotional harm causes bodily injury, also for the bodily harm."

81. When a defendant's conduct is directed at a third person, the Restatement generally requires that a plaintiff be a "close family member" and have "contemporaneously perceive[d] the event."

82. "All acts of terrorism are by their very definition extreme and outrageous and intended to cause the highest degree of emotional distress, literally terror, in their targeted audience."[9]

83. Because Arash Doe, Maryam Doe and Reza Doe were taken hostage and tortured, Plaintiffs need only demonstrate that they are close family members, and that emotional distress did result, in order to state a valid theory of recovery for intentional infliction of emotional distress.[10]

84. Defendants' extreme and outrageous conduct in holding Arash Doe and Maryam Doe hostage and inflicting torture upon them cause Mr. Amir Doe, Mrs. Farnaz Doe, and Reza Doe to suffer from severe emotional harm.

85. Plaintiffs seek compensatory and punitive damages.

## COUNT VI
## PUNITIVE DAMAGES

86. Plaintiffs incorporate by reference the allegations of the preceding paragraphs.

87. The actions of the Defendant the Islamic Republic of Iran, which has been committing, sponsoring, and supporting acts of international terror against international and domestic

---

[9] *Estate of Heiser v. Islamic Republic of Iran*, 659 F. Supp. 2d 20, 27 (D.D.C. 2009) (quoting *Stethem v. Islamic Republic of Iran*, 201 F. Supp. 2d 78, 89 (D.D.C. 2002)).
[10] *See Roth v. Islamic Republic of Iran*, 78 F. Supp. 3d 379, 401 (D.D.C. 2015).

targets, have led to its decades-long designation by the U.S. Department of State as a State Sponsor of Terrorism.[11]

88. The acts of Defendants, each carried out by Defendants' agents as described above, were malicious, willful, unlawful and in wanton disregard of life and the standards of law that govern the actions of civilized nations. Plaintiffs' injuries, as described above, were intended as a result by Iran. In accordance with the provisions of 28 U.S.C. §1605A(c), the Plaintiffs are thereby entitled to a maximal award of punitive damages to the fullest extent of the law.

89. Iran, as a country with a history of human rights abuses and severe violations of international law, has caused the suffering of many who promote internationally acceptable norms and human rights. Many Iranian and foreigners, including Americans, have lost life, liberty, health, and property due to continued acts of terror conducted and/or supported by Iran.

90. This case is among the few bringing light to domestic acts of terror by Iran against its perceived threat by western influence and punishment of individuals with any perceived connections outside Iran. The punitive penalty of such activities should be so high as to prevent Iran from violating international human rights, taking hostages, and torturing individuals. Iran has an indefensible record of human rights abuses; it has been condemned internationally be each and every United Nations commission.

91. Plaintiffs prays that judgment be entered, jointly and severally, against Defendants.

## **REQUEST FOR RELIEF**

---

[11] *See* U.S. DOS, State Sponsors of Terrorism, http://www.state.gov/j/ct/list/c14151.htm

WHEREFORE, Plaintiffs demand judgment against all Defendants and respectfully requests the following relief:

92. Plaintiffs are entitled to compensatory damages for personal injury, assault, batter, and unjust imprisonment suffered as a result of hostage taking and torture.

93. Plaintiffs are entitled to solatium damages for Arash Doe, Maryam Doe, and Reza Doe under 28 U.S.C. § 1605A(c)).

94. Plaintiffs are entitled to consequential damages for Defendants' cruelty, torture, and abuse.

95. Plaintiffs otherwise are entitled to general damages and all other applicable damages.

96. Punitive damages should be assessed (under 28 U.S.C. §1605A(c)).

97. The Court should award Plaintiffs their full costs and attorney's fees as incidental damages and as otherwise appropriate.

98. The Court should grant such further and other relief as this Court deems just and proper.

Dated: August 20, 2024

Respectfully submitted,

Ali Herischi, Esq.
MD0024
Herischi & Associates LLC
11300 Rockville Pike., Suite 712
North Bethesda, Maryland 20852
Phone: 301-363-4540
Fax: 301-363-4538

*Attorney for Plaintiffs*

25